945 So.2d 70 (2006)
Elaine G. DAVIS
v.
Pamela MALVEAUX; Al Ater, in his Official Capacity as Secretary of State; Doug Welborn, in his Official Capacity as Clerk of Court of the Parish of East Baton Rouge; and Elaine Lamb, in her Official Capacity as Registrar of Voters of the Parish of East Baton Rouge.
No. 2006 CE 2096.
Court of Appeal of Louisiana, First Circuit.
October 24, 2006.
*71 Ronald R. Johnson, Tiffany L. Foxworth, Baton Rouge, Counsel for Plaintiff/Appellant, Elaine G. Davis.
Mark D. Plaisance, Baker, Jewel E. "Trae" Welch, III, Zachary, Counsel for Defendant/Appellee, Pamela Malveaux.
Merietta S. Norton, Celia R. Cangelosi, Baton Rouge, Counsel for Defendant/Appellee, Al Ater, Secretary of State, State of Louisiana.
Sheri M. Morris, Baton Rouge, Counsel for Defendant/Appellee, Doug Welborn, Clerk of Court, Parish of East Baton Rouge.
William P. Bryan, III, Baton Rouge, Counsel for Defendant/Appellee, Elaine Lamb, Registrar of Voters, Parish of East Baton Rouge.
Before: PARRO, PETTIGREW, DOWNING, McCLENDON, and HUGHES, JJ.
*72 HUGHES, J.
The plaintiff appeals a judgment dismissing her petition objecting to the Baker City School Board election for District 1. For the reasons expressed below, we affirm the judgment of the trial court.

FACTS
Elaine G. Davis and Pamela Malveaux both qualified to run for the District 1 seat of the Baker City School Board.[1] Mrs. Davis was the incumbent, first elected to the Baker City School Board in 1998 without opposition and subsequently elected in 2003 by defeating two candidates in the primary election. Mrs. Malveaux has never been a candidate for election to public office prior to qualifying for the September 30, 2006 Baker City School Board election. Following the election, the official election returns certified by the Secretary of State indicated that Mrs. Malveaux received 241 votes compared to 221 votes for Mrs. Davis.[2]
On October 9, 2006, Mrs. Davis filed an election suit naming Mrs. Malveaux, Doug Welborn, in his capacity as Clerk of Court for East Baton Rouge Parish, Elaine Lamb, in her capacity as Registrar of Voters for East Baton Rouge Parish, and Al Ater, in his capacity as Secretary of State, as defendants. Mrs. Davis alleged that "except for substantial irregularities of error, fraud or other unlawful activities in the conduct of the election she would have been elected." In particular, Mrs. Davis alleged that twenty-one (21) votes were cast in the Baker City School Board District 1 election by voters who are domiciled outside of the voting district. Specifically, sixteen (16) of these voters were domiciled in Oak Glen Terrace Trailer Court, one (1) voter was domiciled at 3826 Thomas Road, and four (4) voters were listed on the voter registration roll of District 3, but signed in and voted in the District 1 election.[3]
Mrs. Davis prayed that the votes cast by voters not qualified in the Baker City School Board District 1 election be excluded and subtracted from the total votes and that the election be declared null and void resulting in a new election between the two candidates.[4] Alternatively, Mrs. Davis *73 prayed that an order be issued for a restricted election, specifying the date of the election, appropriate candidates, and eligible voters.

ACTION OF THE TRIAL COURT
A trial was held on October 13, 2006 and October 16, 2006. At trial, the parties' main focus was on residents that lived south of Thomas Road in Baker, including sixteen residents in Oak Glen Terrace Trailer Court, and certain residences on Lavey Lane.[5] Mrs. Davis urged that these areas were annexed into the Baker corporate limits, but had never been annexed into the Baker City School Board corporate limits. As such, Mrs. Davis concluded that these residents should never have been allowed to vote in the Baker City School Board election.
At the hearing, Cedric Floyd, a demographer who was hired to create the redistricting plan for the Baker City School Board, testified that the City of Baker and the Baker City School Board have two distinct corporate limits. Mr. Floyd indicated that the municipal line for the city of Baker is different from that of the Baker City School Board District. Mr. Floyd testified that although areas south of Thomas Road including Oak Glen Terrace Trailer Court as well as certain residences on Lavey Lane were annexed into the City of Baker through ordinances, they were never annexed into the Baker City School Board District. The ordinances at issue were as follows:
Ordinance # 1995-26, adopted on January 14, 1997, annexed Oak Glen Terrace Trailer Court into the City of Baker.
Ordinance # 1995-39, adopted on January 9, 1996, annexed 5222 Lavey Lane into the City of Baker.
Ordinance # 1995-40, adopted on January 9, 1996, annexed 5354 Lavey Lane into the City of Baker.
Ordinance # 1997-27, adopted on January 13, 1998, annexed 5400 Lavey Lane into the City of Baker.
Mr. Floyd also testified that a map he created entitled "2000 Baker City School Board Plan" indicated that a small area south of Thomas Road, which area was shaded in green and included Oak Glen Terrace Trailer Court, was a part of District 1 of the Baker City School Board.[6] However, Mr. Floyd testified that this map had to be considered along with the Baker City School Board Street Description Plan. Mr. Floyd pointed out that the street description plan had been provided to him by the Baker City School Board and indicated the corporate limits for the Baker City School Board. Mr. Floyd stated that his map includes Oak Glen Terrace Trailer Court in District 1 because at the time the map was drawn, he utilized the 2000 census available for the Baker corporate limits. Mr. Floyd testified that District 1 was comprised of the area in green as indicated on the map minus the exclusions in the Baker City School Board Street Description Plan. Mr. Floyd opined that these exclusions included Oak Glen Terrace Trailer Court and certain residences on Lavey Lane, and that the plan had been approved by the United States Justice Department based upon the street descriptions as opposed to the map.[7]
*74 Elaine Lamb, Registrar of Voters for the Parish of East Baton Rouge, testified that the registrar's engineering department created the Baker City School Board districts utilizing Mr. Floyd's map. She indicated that the map drafted by the engineering department placed Oak Glen Terrace Trailer Court in Baker City School Board District 1. She testified that at the time the map was created, the registrar had not been provided a copy of the street descriptions; however, once the street descriptions were received, she testified that the map was checked against the descriptions, and that the descriptions did not exclude Oak Glen Terrace Trailer Court from District 1. Furthermore, she testified that on the day of qualifying, Mrs. Davis and her husband, Leroy Davis, met with her to obtain a copy of the District 1 precincts as well as a copy of the district's map. She testified that she gave the Davises a copy of the map drafted by the engineering department. She noted that the Davises could have obtained a precinct registry of the residents in the district, but they did not request same. She could not recall if she specifically discussed Oak Glen Terrace Trailer Court with the Davises. However, she did testify that the precinct had not changed since the 2003 election and that no voter in East Baton Rouge Parish is registered to vote in more than one school board district.
Charles Klotz, Jr., the Superintendent of the City of Baker Municipal School System, testified that students are refused enrollment in the Baker system if they live on the south side of Thomas Road. Nevertheless, he indicated that after rereading the legal descriptions, it would seem that the district did include a portion south of Thomas Road; however, Mr. Klotz was unable to ascertain where that area was located. Further, the map itself includes two separate areas south of Thomas Roadthe one including the Oak Glen Terrace Trailer Court and an area further east.
Mrs. Davis testified that she is familiar with the Oak Glen Terrace Trailer Court and believed it be outside of her district. She testified that prior to the election, she went to Elaine Lamb's office because she had some concerns regarding her district, specifically including voters whose residences had been annexed in the city, but had not been annexed into the school board districts. She testified that she was particularly concerned with Oak Glen Terrace Trailer Court on Thomas Road, which she indicated the school board did not serve, and requested a copy of the district's map for her review.[8] She opined that the map she was given, which was introduced at trial as exhibit P-8, showed that the area in question was outside of her district, so she did not campaign there. Mrs. Davis originally placed an "A" in the area she believed Oak Glen Terrace Trailer Court to be located, which was later discovered to be further east of the actual site. Thereafter, a "D" was placed in the area where Oak Glen Terrace Trailer Court was actually located. Mrs. Davis testified that the blue line on the map, which line traverses below the Oak Glen Terrace Trailer Court, marked the southern boundary of her district. Additionally, there is a yellow line on Thomas Road located above Oak Glen Terrace Trailer Court. When questioned as to whether that yellow line demarked her district, she testified that she could "hardly see that." She also testified that she was unaware whether residents in the Oak Glen Terrace *75 Trailer Court had voted in the prior District 1 school board election in which she had run.
Mrs. Davis also indicated that she raised concerns while meeting with Mrs. Lamb that there were other individuals outside of District 1 who would vote in the election. She testified that she wanted to ensure she had the correct names and streets so that those individuals who were voting would not vote in District 1's election. Mrs. Davis testified that she did not obtain a list of voters prior to the election and was unaware that she could obtain a list of registered voters from the Secretary of State.
Leroy Davis, Mrs. Davis' husband and a former Baker mayor and council member, testified that the Oak Glen Terrace Trailer Court as well as certain properties on Lavey Lane had been annexed into the corporate limits of the city of Baker, but had never been annexed into the Baker City School Board corporate limits. He also testified that he had met with Mrs. Lamb and the two concluded that Oak Glen Terrace Trailer Court and several residences on Lavey Lane were outside of District 1.
Pamela Malveaux testified that prior to the election, she went to the Elections Division of the East Baton Rouge Parish Clerk of Court's office and obtained a map. She testified that she reviewed the physical description of the boundaries with her campaign staff and concluded that Oak Glen Terrace Trailer Court was within District 1. She also testified that she obtained a precinct list from the Elections Division, which she believed included all potential voters registered in District 1. She testified that all registered voters at issue herein were included on that list as voters in District 1, even though many of them had a physical address located in Baton Rouge.
After hearing the testimony, Judge Wilson Fields dismissed Mrs. Davis's petition, reasoning, in pertinent part, as follows:
Now, turning to that area that is marked D-1, the south portion which was also identified with an X with a circle around it, plaintiff argued that that particular area is not in the Baker City School Board District, and that individuals who voted in that particular precinct, which was 2-25A and 2-25B should not have been allowed to vote in the Baker City School Board election.
* * *
The court finds that the area south of Thomas Road is included in the 2000 Baker City School Board District, and those voters who participated in that election participated in it legally. Especially looking at all the evidence, the demographer clearly stated that this is the plan that he submitted to [the Justice Department]. The legal description, the clerk of court's office, the registrar of voter's office also had the same map, the same legal description.
A written judgment dismissing Mrs. Davis's petition was signed on October 18, 2006.

JURISDICTION OF THE APPELLATE COURT
On October 17, 2006, the trial court orally dismissed Mrs. Davis's suit. A judgment reflecting this ruling was presented to the trial court on October 17, 2006, and subsequently signed on October 18, 2006. On October 18, 2006, Mrs. Davis filed a Petition and Order for Appeal, which was signed by the trial judge on that date. The court set a return date of October 20, 2006, and ordered the posting of an appeal bond in the amount of $1,300.00. The bond was posted on October 20, 2006. *76 Thereafter, the record was lodged with this court. On October 22, 2006, Mrs. Malveaux filed a motion to dismiss the appeal, urging that this court has no jurisdiction to consider the appeal insofar as the appeal bond was not timely posted pursuant to La. R.S. 18:1409(D).
Louisiana Revised Statute 18:1409(D) provides, in pertinent part, as follows:
Within twenty-four hours after rendition of judgment, a party aggrieved by the judgment may appeal by obtaining an order of appeal and giving bond for a sum fixed by the court to secure the payment of costs.
Although the judgment at issue was rendered in open court, no appeal may be taken from a final judgment until it has been signed by the trial judge. See La. Code Civ. P. art. 1911; see also La. R.S. 18:1409(J). The underlying matter was submitted to the trial court on Monday, October 16, 2006, and judgment should have been rendered (or signed pursuant to La. R.S. 18:1409(J)) within 24 hours of submission. La. R.S. 18:1409(C). However, the judgment was not signed until Wednesday, October 18, 2006. Mrs. Davis was not notified of the submission of the judgment by the defendants nor did the clerk notify Mrs. Davis that the judgment had been signed as required by La. R.S. 18:1409(C). Louisiana Revised Statute 18:1409(C) requires the clerk to "immediately notify all parties or their counsel of record by telephone and/or facsimile transmission" of the signed judgment.[9] Even though Mrs. Davis did not receive the notice required by law under La. R.S. 18:1409(C), she was able to post bond in a manner that allowed the appeal to be perfected[10] and the record lodged with this court within the return date set by the trial court.[11] Under these circumstances,[12] where Mrs. Davis did not receive the notice as required by La. R.S. 18:1409(C), but was able to post bond in a manner to timely perfect her appeal within the return date set by the trial court, and recognizing that appeals are favored in the law, we deny the motion to dismiss the appeal.

LEGAL PRECEPTS
In an election contest that seeks to have the results of an election declared null and void, the plaintiff bears the burden of proof. The plaintiff's burden is two-fold. The plaintiff must first prove either fraud or irregularities are present. Then the plaintiff must prove that, but for the fraud or irregularities, the outcome of the election would have been different. Savage v. Edwards, 98-1762, p. 4 (La.App. 3 Cir. 11/23/98), 728 So.2d 428, 431, aff'd, 98-2929 (La.12/18/98), 722 So.2d 1004.
The Election Code states that an election should be declared void only: (1) if it *77 is impossible to determine the result of an election or (2) the number of unqualified voters who were allowed to vote was sufficient to change the result of the election if they had not been allowed to vote. Id. at 430-431, (citing La. R.S. 18:1432).[13] However, an objection to the qualifications of a voter or to an irregularity in the conduct of an election which, with the exercise of due diligence, could have been raised by objections at the polls is deemed waived. La. R.S. 18:1434.[14]

ANALYSIS
In advance of the election at issue, Mrs. Davis testified that she had concerns about residents in the Oak Glen Terrace Trailer Court, among others, voting in the District 1 school board election. Therefore, Mrs. Davis went to the registrar of voters to ascertain what her precincts entailed. Although she was able to obtain a copy of the map of her district, Mrs. Davis' testimony indicated that the map did not provide a clear demarcation of her district. Nevertheless, all maps introduced at the hearing pertaining to the district at issue included the Oak Glen Terrace Trailer Court within the district.[15] Further, a list obtained by Mrs. Malveaux prior to the election indicated that all voters at issue were listed to vote in District 1. Although Mrs. Davis could have obtained the same list as Mrs. Malveaux prior to the election, she failed to do so. We find that Mrs. Davis, through due diligence, could have discovered that the voters at issue, including those in Oak Glen Terrace Trailer Court, those on Lavey Lane, and the other voter located south of Thomas Road, were registered to vote in District 1. Insofar as Mrs. Davis failed to object to these voters prior to the election, pursuant to La. R.S. 18:1434, we find that she has waived her right to object to their qualifications.
Nevertheless, we conclude that the majority of the residents at issue herein properly voted in District 1. Although Mr. Floyd testified that the residences at issue *78 had not been annexed into the Baker City School Board limits, Louisiana Revised Statute 17:72(H)(1) indicates that the Baker municipal school system was established "within the incorporated limits of the city of Baker as the same existed as of June 1, 1997." La. R.S. 17:72(H)(1). The evidence adduced at trial reflects that the Oak Glen Terrace Trailer Court as well as two residences at issue on Lavey Lane had been annexed into the City of Baker prior to June 1, 1997. The only properties at issue that had not been so annexed were 5400 Lavey Lane and 3826 Thomas Road. Even assuming that the individuals at these two residences voted improperly, those votes alone are not sufficient to change the result of the election. La. R.S. 18:1432.[16] As such, we do not disagree with the trial court's finding that Oak Glen Terrace Trailer Court is included in District 1 of the Baker City School Board.

CONCLUSION
For the above and foregoing reasons, we deny the motion to dismiss the appeal, and we affirm the judgment of the trial court dated October 18, 2006, dismissing the instant suit.
MOTION TO DISMISS APPEAL DENIED. JUDGMENT AFFIRMED.
PARRO, J., and MCCLENDON, J., dissent for reasons to be assigned.
PARRO and MCCLENDON, JJ., dissenting in part.
We respectfully dissent insofar as we would grant the motion to dismiss the appeal. The appeal bond was posted outside of the requisite delays set forth in La. R.S. 18:1409.
We note that the majority relies upon the defendants' failure to provide notice to Mrs. Davis that the judgment had been filed and the clerk's subsequent failure to provide notice to Mrs. Davis or her counsel by "telephone and/or facsimile transmission" that the judgment had been signed as required by La. R.S. 18:1409(C). However, we believe that the failure to provide notice under the circumstances presented herein is not controlling insofar as La. R.S. 18:1409(D) clearly delineates the requisite time delays in which an appeal bond must be posted.
We note that La. R.S. 18:1409(C) requires a trial judge to render judgment "within twenty-four hours after the case is submitted to him." For purposes of the statute, judgment is "deemed to have been rendered when signed by the judge." La. R.S. 18:1409(J). Since the case was submitted to the trial judge on Monday, October 16, 2006, Mrs. Davis should have known that a written judgment was to be signed no later than Tuesday, October 17, 2006. Additionally, we note that La. R.S. 18:1409(D) requires the posting of the bond "within twenty-four hours after rendition of judgment." Therefore, under the requirements clearly set forth in La. R.S. 18:1409, Mrs. Davis should have known that a bond was required to be posted no later than Wednesday, October 18, 2006, which was forty-eight hours after submission of the case to the trial court. Nonetheless, the bond at issue was not posted until Friday, October 20, 2006.
We note that the trial judge did not sign the written judgment until October 18, 2006 at 2:11 p.m. Arguably, under La. R.S. *79 18:1409(D), this allowed Mrs. Davis until October 19, 2006 at 2:11 p.m. to post her appeal bond.[1] Yet, Mrs. Davis still did not post her bond within the additional time resulting from the delay in the signing by the trial court. Therefore, since Mrs. Davis failed to timely post her bond, this court is without jurisdiction to consider this appeal. See Dumas v. Jetson, 446 So.2d 747 (La.App. 1 Cir.1983), reversed in part on other grounds, 445 So.2d 424 (La. 1984). While we agree with the majority's conclusion as to the merits, we do not believe that this court has jurisdiction to consider the merits. As such, we would grant the motion to dismiss the appeal.
Moreover, we believe the majority opinion's discussion regarding appellate jurisdiction sets a dangerous precedent in election-contest suits. In particular, the burden of obtaining both an order of appeal and the fixing of the bond amount by the court should be on the attorney, not on the trial court or the clerk of the trial court. Although the statute sets forth a duty on the clerk to notify the parties or their counsel of the judgment, the deadline for obtaining the order of appeal and posting the requisite bond is clearly set forth, and the appealing party should be charged with the ultimate responsibility for complying with the filing deadlines.
We respectfully dissent in part.
NOTES
[1] In East Baton Rouge Parish, there are three separate public school systemsthe East Baton Rouge Parish School System, the City of Baker Municipal School System, and the Zachary Community School System. The Baker municipal school system was established "within the incorporated limits of the city of Baker as the same existed as of June 1, 1997." La. R.S. 17:72(H)(1). The first elections for members of the Baker City School Board were conducted in the fall of 1998 for a term of four years. Additionally, elections for members of the Baker City School Board should have been conducted in the fall of 2002, but were delayed until 2003 due to litigation concerning the redistricting plan adopted by the Baker City School Board following the 2000 census. The district plan adopted for the Baker City School Board following the 2000 census was used for the spring 2003 and September 30, 2006 elections.
[2] The unofficial count recorded by the Secretary of State indicated that Mrs. Malveaux received 229 votes while Mrs. Davis received 216 votes.
[3] We note that Mrs. Davis raised additional issues at the trial court, including the malfunction of three voting machines, inappropriate conduct at precincts 13A and 13B, and issues regarding the difference between the official and unofficial returns. Insofar as those arguments have not been briefed to this court, they have been abandoned and we have not addressed them herein.
[4] Insofar as precincts 2-25A and 2-25B are where sixteen alleged ineligible voters cast ballots, Mrs. Davis also alternatively prayed that the votes cast in those two precincts be eliminated for both candidates and election results determined using the remaining precincts. However, the trial court has no authority to provide this relief. See La. R.S. 18:1432.
[5] Jacqueline Champagne testified that she resides at 3838 Oak Glen Terrace Trailer Court, and indicated that she voted for Mrs. Malveaux in the District 1 election.
[6] The map was introduced at the hearing as exhibit D-1.
[7] Mr. Floyd testified that the map and street descriptions were also sent to the Secretary of State, Department of Elections, registrar of voters, and the Baker City School Board.
[8] Mrs. Davis was originally provided a black and white map, but was later provided a color-coded map.
[9] The notice of judgment indicates that it was mailed to the parties on October 18, 2006.
[10] See Bradford v. Johnson, 94-1703 (La. App. 1 Cir. 8/19/94), 641 So.2d 222, writ denied, 94-2186 (La.8/23/94), 659 So.2d 495, wherein appellant, in lieu of a bond, paid the costs of the appeal within the proper time allowed for perfecting an appeal.
[11] We note that although La. R.S. 18:1409(D) allows the trial court to set a return date "not to exceed three days after rendition of judgment," the trial court set the underlying return date for two days after the rendition of the judgment.
[12] We distinguish Dumas v. Jetson, 446 So.2d 747 (La.App. 1 Cir.1983), reversed in part on other grounds, 445 So.2d 424 (La.1984) from the underlying matter because La. R.S. 18:1409(C) was apparently not at issue therein. We also distinguish Franklin v. Secretary of State, XXXX-XXXX (La.App. 3 Cir. 10/19/06), 942 So.2d 62, insofar as the court found that the purported appeal bond "was no bond at all."
[13] Louisiana Revised Statute 18:1432(A) reads as follows:

If the trial judge in an action contesting an election determines that: (1) it is impossible to determine the result of election, or (2) the number of qualified voters who were denied the right to vote by the election officials was sufficient to change the result in the election, if they had been allowed to vote, or (3) the number of unqualified voters who were allowed to vote by the election officials was sufficient to change the result of the election if they had not been allowed to vote, or (4) a combination of the factors referred to in (2) and (3) herein would have been sufficient to change the result had they not occurred, the judge may render a final judgment declaring the election void and ordering a new primary or general election for all the candidates, or, if the judge determines that the appropriate remedy is the calling of a restricted election, the judge may render a final judgment ordering a restricted election, specifying the date of the election, the appropriate candidates for the election, the office or other position for which the election shall be held, and indicating which voters will be eligible to vote.
[14] Louisiana Revised Statute 18:1434 provides as follows:

An objection to the qualifications of a voter, except for an objection to a voter who should have been removed from the voter registration rolls pursuant to R.S. 18:173, or to an irregularity in the conduct of the election, which with the exercise of due diligence could have been raised by a challenge of the voter or objections at the polls to the procedure, is deemed waived.
[15] We note that counsel for Mrs. Davis suggested that a dotted yellow line on the map given to Mrs. Davis by the registrar marked the boundaries of her district. Nevertheless, Mrs. Davis noted that she could "hardly see that." Further, she testified that the line running below the Oak Glen Terrace Trailer Court marked the southern boundary of her district.
[16] Furthermore, notwithstanding whether the school board's street description plan can override the authority of La. R.S. 17:72(H)(1), the registrar's testimony indicated that the exclusions therein did not include the Oak Glen Terrace Trailer Court. Furthermore, all maps created by the various entities herein include Oak Glen Terrace Trailer Court within the district.
[1] Additionally, we note that Mrs. Davis was aware of the judgment, having filed her Petition for Appeal prior to the signing of the judgment.